UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 12-80064-CIV-RYSKAMP/HOPKINS

SHELLEY PENNEY, GLADYS MURPHY, ADRIANAH SEELY, and STEVEN MARKS, individually and on behalf of all others similarly situated,

Plaintiffs,

v.

WAIORA, LLC, a Florida limited liability company, ENO RESEARCH AND CONSULTING SERVICES, LLC, a foreign limited liability company, NDA CONSULTING, INC., a Florida profit corporation, STANLEY J. CHERELSTEIN, individually, ERIK J. DEITSCH a/k/a RIK DEITSCH, individually, NORWOOD STONE, individually, and JAMES FLOWERS, individually,

Defendants.
_____________________________________________/

**AMENDED CLASS ACTION COMPLAINT**

Plaintiffs, SHELLEY PENNEY ("Penney"), GLADYS MURPHY ("Murphy"), ADRIANAH SEELY ("Seely"), and STEVEN MARKS ("Marks")(collectively, the "Plaintiffs"), individually and on behalf of all similarly situated persons, bring this action against Defendants, WAIORA, LLC ("Waiora"), ENO RESEARCH AND CONSULTING SERVICES, LLC ("ENO"), NDA CONSULTING, INC. ("NDA"), STANLEY J. CHERELSTEIN ("Cherelstein"), ERIK J. DEITSCH ("Deitsch"), NORWOOD STONE ("Stone"), and JAMES FLOWES ("Flowers")(collectively, the "Defendants"), and allege as follows:

## General Allegations Common to all Counts

## Introduction

1. This is an action seeking to redress negligent and/or intentional misrepresentation on the part of numerous parties, which manufactured, marketed, and/or sold a product to the general public, with false labeling and under false pretense.

2. As more fully set forth herein, Defendants, through their respective acts and/or omissions, intentionally and/or negligently manufactured, marketed, and/or distributed a product known as Natural Cellular Defense ("NCD"); NCD consists of only water and a mineral known as Zeolite, and was promoted as a nutritional supplement.

3. Defendants manufactured, marketed, sold, and/or distributed 15ml bottles of NCD at exorbitant prices, representing (on the label) that each bottle contained a specific amount of Zeolite; however, in reality, each bottle contained only a minute fraction of the amount represented.

4. Plaintiffs, as well as tens of thousands of similarly situated consumers, purchased NCD in reliance upon Defendants' misrepresentations, and as a consequence thereof, suffered damages.

## Jurisdiction and Venue

5. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2), the Federal Class Action Fairness Act. Plaintiffs and Defendants are citizens of different states, and the amount in controversy exceeds Five Million Dollars ($5,000,000), exclusive of interest, fees, and costs.

6. This Court has personal jurisdiction over Defendants pursuant to 18 U.S.C. §1965, the Due Process Clause of the United States Constitution, and Florida's Long-Arm Statute, Section 48.193, Florida Statutes.

7. Pursuant to 28 U.S.C. §1367, this Court has supplemental jurisdiction over Plaintiffs' additional claims arising under Florida law, including, *inter alia*, fraudulent misrepresentation, negligent misrepresentation, and negligence.

8. The requirements of 28 U.S.C. § 1391(b)(1)-(2) have been satisfied, making venue appropriate within the Southern District of Florida. Some of the Plaintiffs and a majority of the Defendants reside in this jurisdiction, and a substantial number of transactions and occurrences giving rise to this action occurred within the Southern District of Florida.

9. Defendants, directly and indirectly, have made, and continue to make, use of the means and instrumentalities of interstate commerce, the means and instruments of transportation and communication in interstate commerce and of the mails in connection with the acts, transactions, transgressions, practices, and course of dealing alleged herein.

## **Class Action Allegations**

10. Plaintiffs bring this action on their own behalf and on behalf of all other persons and/or entities who purchased NCD at any time between April 2008 and October 2011 (the "Class") as a class action pursuant to Rule 23(a)(b) of the Federal Rules of Civil Procedure.

11. Excluded from the Class are:

a. The Defendants;

b. Members of the immediate family of each of the Defendants that are not corporate entities;

c. Any person who was, or is, an executive, officer, employee, director, and/or member of any of the Defendant corporations and/or companies during the relevant time period;

d. Any person, firm, trust, corporation, company, officer, director, member, or other individual or entity in which any Defendant has a controlling interest or which is affiliated with any of the Defendants; and

e. The legal representatives, affiliates, agents, heirs, successors in interest, or assigns of any such excluded party.

12. The members of the Class are so numerous that joinder of all members is impracticable. While the exact number of people within the Class can only be determined through the process of discovery, Plaintiffs believe that the Class will consist of more than 80,000 people.

13. Plaintiffs' claims are typical of the claims of members of the entire Class. As set forth more fully below, Plaintiffs and all members of the Class suffered damage as a result of Defendants' unlawful course of conduct, including, but not limited to, fraud, negligent misrepresentation, and general negligence.

14. Plaintiffs will fairly and adequately protect the interests of the members of the Class and have retained competent counsel experienced in class action litigation. Plaintiffs have no interests that are contrary to, or in conflict with, those of the members of the Class that Plaintiffs seek to represent.

15. A class action is superior to other methods for adjudicating this controversy. Damages suffered by individual Class members may be relatively small, many less than sixty dollars ($60.00); therefore, the expense and burden of individual litigation makes it virtually impossible for the Class members to individually seek redress for Defendants' wrongful conduct.

16. Common questions of law and fact exist as to all members of the Class and predominate over questions solely affecting any individual Class member. Among questions of law and fact common to each member of the Class are:

a. Whether Defendants breached duties imposed in tort by selling each member of the Class one or more bottles of NCD that failed to contain a specified amount of Zeolite as listed on the product label;

b. Whether Defendants have violated one or more statutory obligations by selling each member of the Class one or more bottles of NCD that failed to contain a specified amount of Zeolite as listed on the product label.

17. Plaintiffs know of no difficulty that would be encountered in the management of this litigation that would preclude its maintenance as a class action.

18. The names and addresses of Defendants' customers who purchased NCD prior to October 2011 are obtainable from information in the possession of one or more of the Defendants and/or their various "distributors." Notice can be delivered to all purchasers of NCD by U.S. mail and/or electronic mail using techniques and a form of notice similar to those customarily used in class action litigation.

**The Parties**

19. At all times material hereto, Penney was and is a resident of New Brunswick, Canada, was a consumer of NCD, was and is, over the age of eighteen (18), and otherwise *sui juris*.

20. At all times material hereto, Murphy was and is a resident of Florida, was a consumer of NCD, was and is over the age of eighteen (18), and is otherwise *sui juris*.

21. At all times material hereto, Seely was and is a resident of Florida, was a consumer of NCD, was and is over the age of eighteen (18), and otherwise *sui juris*.

22. At all times material hereto, Marks was and is a resident of Oklahoma, was a consumer of NCD, was and is over the age of eighteen (18), and is otherwise *sui juris*.

23. At all times material hereto, Waiora was and is a limited liability company organized and existing under the laws of the State of Florida, with its principal place of business located in Boca Raton, Florida.

24. At all material times, Waiora has been and is the creator, marketer, seller, and distributor of NCD.

25. At all times material hereto, Cherelstein was and is a resident of Florida, over the age of eighteen (18) years and otherwise *sui juris*.

26. At all times material hereto, Stone was and is a resident of North Carolina, over the age of eighteen (18) years, and otherwise *sui juris*.

27. At all times material hereto, ENO was and is a limited liability company organized and existing under the laws of the State of North Carolina with its principal place of business located in Hillsborough, North Carolina. ENO was the manufacturer of NCD until approximately October 2011.

28. At all times material hereto, Flowers was and is a resident of North Carolina, over the age of eighteen (18), and otherwise *sui juris.*

29. At all times material hereto, NDA was and is a for-profit corporation organized and existing under the laws of the State of Florida with its principal place of business located in Coral Springs, Florida.

30. At all times material hereto, Deitsch was and is a resident of Florida, over the age of eighteen (18) years, and otherwise *sui juris*.

**Factual Background**

31. NCD has been and is marketed to the general public as a health supplement that supports the immune system, removes heavy metals and other toxins from the body, and balances pH levels in the body. It has been marketed (by the Defendants) as an appropriate course of treatment for various infirmities, including autism, cancer, and a wide array of other serious medical conditions.

32. Millions of 15ml bottles of NCD (i.e., Zeolite and water) have been sold at an average price of more than Fifty Dollars ($50.00) per bottle.

33. From April 2008 through October 2011, labeling for NCD represented that there were one hundred (100) servings per bottle, that three (3) drops are equal to one serving, and that each serving contained twenty four milligrams (24mg) of Zeolite (with the remainder being water).

34. Accordingly, per the NCD label, there were 2400mg of Zeolite per bottle (24mg per serving multiplied by 100 servings).

35. In December 2010, a third party independent testing laboratory known as "The Mineral Lab" conducted x-ray fluorescence and x-ray diffraction testing on a sample consisting of ten (10) bottles of NCD.

36. Those tests showed that each bottle of NCD contained an average of only 230mg of solids (in contrast to the 2400mg of Zeolite represented by the label to be in each and every bottle of NCD).

37. Test results further confirmed that only about sixty-seven percent (67%) of those solid materials was actual Zeolite minerals (with the rest consisting of various other minerals and materials not listed on the NCD label).

38. Accordingly, each bottle contained an average of 154mg of Zeolite, i.e., less than seven percent (7%) of the amount represented on the label.

39. In September 2011, another independent testing laboratory, Mineralogy, Inc., tested sample NCD bottles.

40. Those tests concluded that each bottle contained an average of 27mg of solids per bottle. Even assuming the 27mg of solids in these bottles were one hundred percent (100%) Zeolite, each bottle of NCD still contained only about one percent (1%) of the Zeolite content represented on the label.

41. Plainitff, Shelley Penney, brought these tests to the attention of Waiora.

42. Waiora denied that its label was inaccurate but promptly fired its manufacturer and began using a new company to manufacture NCD ("New NCD").

43. New NCD (which was tested and appears to meet label claims) was and is entirely different from NCD manufactured prior to October 2011. New NCD is a visibly thicker substance, has a different color and texture, and has an entirely different taste.

44. Cherelstein (individually and on behalf of Waiora) and Deitch have made multiple public statements that New NCD contains more zeolite than the original NCD. But according to the product labels, New NCD contains less zeolite. Accordingly, by their own statements, these Defendants admit that the original NCD label was inaccurate.

45. Deitsch has further admitted to committing a serious fraud, by measuring the label amount of Zeolite– not by measuring actual Zeolite – but by measuring a Zeolite "slurry," which Deitsch freely admits to have been a mixture of water and zeolite, mislabeled as pure zeolite for labeling purposes. The result was a product so diluted that it contained almost no Zeolite whatsoever. Waiora was privy to this fraud prior to October 2011, but failed or refused to have its product accurately measured and labeled.

46. In early 2012, Waiora announced that it was "bringing back" original NCD, i.e. the product as it existed prior to October 2011. Incredibly, the label now indicates 90 servings and 2.4mg of zeolite per serving – in other words, less than 10% of the zeolite content set forth on the exact same product's prior label.

47. All conditions precedent to the filing of this litigation have occurred, been waived, or have otherwise been satisfied.

**COUNT I**
**NEGLIGENT MISREPRESENTATION**
(As to Defendant Waiora)

48. Plaintiffs re-aver and incorporate paragraphs 1 through 47 above, as though fully set forth herein.

49. Between April 2008 and October 2011, Waiora, by and through its various officers, directors, employees, and agents, represented that each bottle of NCD contained 2400mg of Zeolite.

50. The representations set forth in Paragraph 49 relate to a material fact (the amount of Zeolite in NCD) and were false when made; Waiora should and could, through the use of reasonable care, have known that its representations were false when made.

51. When making statements regarding the content of NCD, Waiora at all material times intended that its customers, and the general public, would rely on its statements.

52. All members of the Class justifiably relied upon Waiora's false and incorrect statements regarding the Zeolite content of NCD, resulting in damages, including but not limited to payment of more than fifty dollars per bottle for millions of 15ml bottles of valueless liquid, under false pretenses.

WHEREFORE, Plaintiffs, SHELLEY PENNEY, GLADYS MURPHY, ADRIANAH SEELY, and STEVEN MARKS, on behalf of themselves and all others similarly situated, request that this Court (a) certify a class of all similarly situated individuals; (b) enter judgment in their favor, and against Defendant WAIORA, LLC, for all appropriate compensatory damages; (c) enter an award of attorney's fees and costs pursuant to any fee-shifting provision which is or becomes applicable; and (d) award all such other relief as is deemed just and equitable under the circumstances.

## COUNT II
## FRAUDULENT MISREPRESENTATION
(As to Defendant Waiora)

53. Plaintiffs re-aver and incorporate paragraphs 1 through 47 above, as though fully set forth herein. This Count II (fraudulent misrepresentation) is pled in the alternative to Count I (negligent misrepresentation).

54. Between April 2008 and October 2011, Waiora, by and through its various officers, directors, employees, and agents, misrepresented to the general public that each bottle of NCD contained 2400mg of Zeolite per bottle.

55. The misrepresentations set forth in Paragraph 54 relate to a material fact (the amount of Zeolite in NCD) and were false when made. Waiora knew that its statement were false when made. Waiora knew that Zeolite in NCD had been watered down into a Zeolite "slurry" prior to

measurement for labeling purposes, that measuring a "slurry" is not the equivalent of measuring a pure solid, and that the amount of Zeolite on the label was therefore inaccurate.

56. When making false statements regarding the Zeolite content of NCD, Waiora at all material times intended that its customers, and the general public, would rely on its false statements.

57. All members of the Class relied upon Waiora's false statements regarding the Zeolite content of NCD, resulting in damages, including but not limited to payment of more than fifty dollars per bottle for millions of 15ml bottles of valueless liquid, under false pretenses.

WHEREFORE, Plaintiffs, SHELLEY PENNEY, GLADYS MURPHY, ADRIANAH SEELY, and STEVEN MARKS, on behalf of themselves and all others similarly situated, request that this Court (a) certify a class of all similarly situated individuals; (b) enter judgment in their favor, and against Defendant WAIORA, LLC, for all appropriate compensatory damages; (c) enter an award of attorney's fees and costs pursuant to any fee-shifting provision which is or becomes applicable; and (d) award all such other relief as is deemed just and equitable under the circumstances.

**COUNT III**
**NEGLIGENT MISREPRESENTATION**
(As to Defendant Cherelstein)

58. Plaintiffs re-aver and incorporate paragraphs 1 through 47 above, as though fully set forth herein.

59. Between April 2008 and October 2011, Cherelstein, in his personal capacity, represented to members of the Class that each bottle of NCD contained 2400mg of Zeolite per bottle.

60. The representations set forth in Paragraph 59 relate to a material fact (the amount of Zeolite in NCD) and were false when made; Cherelstein should and could, through the use of reasonable care, have known that his representations were false when made.

61. For example, Cherelstein knew that Zeolite in NCD had been "watered down" into a "slurry" prior to measuring it for inclusion into Zeolite, leaving no possible way for any reasonable person to believe the amount of solid Zeolite listed on the label (2400mg) was accurate.

62. When making statements regarding the content of NCD, Cherelstein at all material times intended for members of the Class to rely on his statements.

63. Members of the Class justifiably relied upon Cherelstein's false and incorrect statements regarding the Zeolite content of NCD, resulting in damages, including but not limited to payment of more than fifty dollars per bottle for millions of 15ml bottles of valueless liquid, under false pretenses.

WHEREFORE, Plaintiffs, SHELLEY PENNEY, GLADYS MURPHY, ADRIANAH SEELY, and STEVEN MARKS, on behalf of themselves and all others similarly situated, request that this Court (a) certify a class of all similarly situated individuals; (b) enter judgment in their favor, and against Defendant STANLEY CHERELSTEIN, for all appropriate compensatory damages; (c) enter an award of attorney's fees and costs pursuant to any fee-shifting provision which is or becomes applicable; and (d) award all such other relief as is deemed just and equitable under the circumstances.

## COUNT IV
## NEGLIGENT MISREPRESENTATION
(As to Defendant Stone)

64. Plaintiffs re-aver and incorporate paragraphs 1 through 47 above, as though fully set forth herein.

65. Between 2008 and 2011, Stone, in his personal capacity, represented to members of the Class that each bottle of NCD contained 2400mg of Zeolite per bottle.

66. The representations set forth in Paragraph 65 relate to a material fact (the amount of Zeolite in NCD) and were false when made; Stone should and could, through the use of reasonable care, have known that his representations were false when made.

67. For example, Stone knew that Zeolite had been "watered down" into a "slurry" prior to measuring it for inclusion into NCD, leaving no possible way for any reasonable person to believe the amount of Zeolite on the label (2400mg) was accurate.

68. When making statements regarding the content of NCD, Stone at all material times intended for members of the Class to rely on his statements.

69. Members of the Class justifiably relied upon Stone's false and incorrect statements regarding the Zeolite content of NCD, resulting in damages, including but not limited to payment of more than fifty dollars per bottle for millions of 15ml bottles of valueless liquid, under false pretenses.

WHEREFORE, Plaintiffs, SHELLEY PENNEY, GLADYS MURPHY, ADRIANAH SEELY, and STEVEN MARKS, on behalf of themselves and all others similarly situated, request that this Court (a) certify a class of all similarly situated individuals; (b) enter judgment in their favor, and against Defendant NORWOOD STONE, for all appropriate compensatory damages; (c) enter an award of attorney's fees and costs pursuant to any fee-shifting provision which is or becomes applicable; and (d) award all such other relief as is deemed just and equitable under the circumstances.

## COUNT V
## FRAUDULENT MISREPRESENTATION
(As to Defendant Deitsch)

70. Plaintiffs Plaintiffs re-aver and incorporate paragraphs 1 through 47 above, as though fully set forth herein.

71. Between April 2008 and October 2011, Deitsch, in his personal capacity, represented to members of the Class that each bottle of NCD contained 2400mg of Zeolite per bottle.

72. The representations set forth in Paragraph 71 relate to a material fact (the amount of Zeolite in NCD) and were knowingly false when made.

73. Deitch had knowingly "watered down" Zeolite into a "slurry" prior to measuring it for inclusion into Zeolite, and knew for a fact that each bottle did not contain 2400mg of Zeolite.

74. When making false statements regarding the content of NCD, Deitsch at all material times intended for members of the Class to rely on his false statements.

75. Members of the Class did rely on Deitsch's false statements regarding the Zeolite content of NCD, resulting in damages, including but not limited to payment of more than fifty dollars per bottle for millions of 15ml bottles of valueless liquid, under false pretenses.

WHEREFORE, Plaintiffs, SHELLEY PENNEY, GLADYS MURPHY, ADRIANAH SEELY, and STEVEN MARKS, on behalf of themselves and all others similarly situated, request that this Court (a) certify a class of all similarly situated individuals; (b) enter judgment in their favor, and against Defendant ERIK J. DEITSCH., for all appropriate compensatory damages; (c) enter an award of attorney's fees and costs pursuant to any fee-shifting provision which is or becomes applicable; and (d) award all such other relief as is deemed just and equitable under the circumstances.

**COUNT VI**
**FRAUDULENT MISREPRESENTATION**
(As to Defendant NDA)

76. Plaintiffs re-aver and incorporate paragraphs 1 through 47 above, as though fully set forth herein.

77. Between April 2008 and October 2011, NDA, put out false and misleading information to members of the Class, representing that each bottle of NCD contained 2400mg of Zeolite per bottle.

78. The representations set forth in Paragraph 77 relate to a material fact (the amount of Zeolite in NCD) and were knowingly false when made.

79. NDA had actual knowledge that its principal, Deitsch, had "watered down" Zeolite into a "slurry" prior to measuring it for inclusion into Zeolite, and knew for a fact that each bottle did not contain 2400mg of Zeolite.

80. When making false statements regarding the content of NCD, NDA at all material times intended for members of the Class to rely on its false statements.

81. Members of the Class did rely on NDA's false statements regarding the Zeolite content of NCD, resulting in damages, including but not limited to payment of more than fifty dollars per bottle for millions of 15ml bottles of valueless liquid, under false pretenses.

WHEREFORE, Plaintiffs, SHELLEY PENNEY, GLADYS MURPHY, ADRIANAH SEELY, and STEVEN MARKS, on behalf of themselves and all others similarly situated, request that this Court (a) certify a class of all similarly situated individuals; (b) enter judgment in their favor, and against Defendant NDA CONSULTING, INC., for all appropriate compensatory damages; (c) enter an award of attorney's fees and costs pursuant to any fee-shifting provision which is or becomes applicable; and (d) award all such other relief as is deemed just and equitable under the circumstances.

**COUNT VII**
**NEGLIGENCE**
**(As to Defendant Waiora)**

82. Plaintiffs re-aver and incorporate paragraphs 1 through 47 above, as though fully set forth herein.

83. At all times material hereto, Waiora had a duty to ensure that the label on NCD was true and accurate; this included a duty to ensure that amounts of Zeolite set forth on the product label correspond to the amount of Zeolite actually in the product. This is both a common law duty, and a statutory duty imposed by Fair Packaging and Labeling Act, 15 U.S.C. 1451, *et. seq.*

84. Waiora breached the duty set forth in the preceding paragraph by failing to exercise reasonable care, resulting in a product label grossly misrepresentative of the actual amount of Zeolite in each NCD bottle.

85. As a result of Waiora's negligence, members of the Class suffered damages, including but not limited to payment of more than fifty dollars per bottle, for millions of 15ml bottles of valueless liquid, under false pretenses.

WHEREFORE, Plaintiffs, SHELLEY PENNEY, GLADYS MURPHY, ADRIANAH SEELY, and STEVEN MARKS, on behalf of themselves and all others similarly situated, request that this Court (A) certify a class of all similarly situated individuals; (b) enter judgment in their favor, and against Defendant WAIORA, LLC., for all appropriate compensatory damages; (c) enter an award of attorney's fees and costs pursuant to any fee-shifting provision which is or becomes applicable; and (d) award all such other relief as is deemed just and equitable under the circumstances.

## INCORPORATION OF PRIOR COUNTS AS TO DEFAULTED DEFENDANTS, FLOWERS AND ENO

On April 5, 2012, the Clerk of Court entered a Default against Defendant, ENO Research and Consulting Services, LLC [DE #40]. On May 15, 2012, the Clerk of Court entered a Default against Defendant, James Flowers. These Defendants have never appeared in this case, and did not seek dismissal of Plaintiff's original complaint [DE #66]. To the extent necessary, Plaintiffs re-aver the allegations of their original Complaint [DE #1] only as against Defendants ENO and Flowers; Plaintiffs otherwise rest on the defaults obtained against these defendants, and will seek entry of Final Default Judgment against them as and when appropriate.

**DEMAND FOR JURY TRIAL**

Plaintiffs, individually and on behalf of all others similarly situated, demand a trial by jury as to all issues triable as of right by jury.

Respectfully Submitted,

**SALPETER GITKIN, LLP**
Co-counsel for Plaintiffs
Museum Plaza - Suite 503
200 S. Andrews Avenue
Fort Lauderdale, FL 33301
(954) 467-8622; (954) 467-8623 FAX
James P. Gitkin, Esq.
Florida Bar No. 570001

**LAW OFFICES OF**
**NOLAN KLEIN, P.A.**
Co-counsel for Plaintiffs
Harrison Executive Centre
1930 Harrison St., Ste. 502
Hollywood, Florida 33020
(954) 372-0985; (305) 397-1924 FAX
By: s/Nolan K. Klein __________
NOLAN K. KLEIN
Florida Bar No. 647977

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing instrument was e-filed with the Clerk of the Court using CM/ECF, and delivered by electronic mail to all persons on the attached service list, this 7th day of January, 2013.

By: s/Nolan K. Klein__________
**NOLAN K. KLEIN**